Good morning, Your Honor. Good morning. Counsel, if it pleases the Court, my name is Don Bell and I represent the plaintiff claimant Leonora Cunningham. I would like to reserve two minutes for rebuttal. Ms. Cunningham filed for SSI or Supplemental Security Income benefits back on October 30, 1996. I don't intend necessarily to review all of the history of this case. It's been, and she's alleged, a disability onset date of May 26, 1995, as a result primarily of an automobile accident where she suffered a head injury, indicated as a closed head injury, and... What was the extent of that injury? Well, she, there is some conflict in the records, Your Honor, but there was some indication she was in a coma for up to ten days. There was other evidence that perhaps she had recovered somewhat within five days. Can you really suggest she was in a coma for ten days when the medical records clearly reflect that she was transferred from the hospital to a rehabilitation center in five days? I understand that, Your Honor. Her testimony would have been the ten, but the records, as I indicated, would be five. Or maybe she was even making improvement before the five day period. Doesn't the medical record, which is the most reliable evidence of this, reflect that the maximum period of her coma was five days? And in all likelihood, it was much less than that because presumably the moment you come out of a coma, you don't get kicked out of the hospital. We hope. We hope. The medical records would be the best evidence, Your Honor. But it appears that she continued, though, to experience significant problems of a mental nature. She has been variously seen by a number of doctors. The primary treating physicians in this case have been Dr. Snyder and Dr. Richardson. Well, we do have a lot of doctors here, and Dr. Knight's one of them, too, right? And we've got several differing medical opinions of her mental and physical health. If I make the argument that Dr. Knight did seem to do a decent job of reviewing the various opinions and concluding that Cunningham suffered from a mild mental disorder, why isn't that supported by substantial evidence? Well, Your Honor, I think you have to look at then all of the additional evidence. The medical records and personally examined Ms. Cunningham. But I don't get to do it in the first instance, as if I were a trial judge or as if I'm that individual. So when I have a whole bunch of them where they're differing and, you know, substantial evidence the way I understand it is not the same as what I decide the case the same is whether that conclusion is supported. And it basically, the trier of fact is the one that resolves those issues. So there is some, you know, why isn't, there is some evidence to support Dr. Knight's conclusion. Why isn't it substantial? Well, Your Honor, I think that when you look at the entire record as a whole, it's not substantial. And that would be my contention, particularly when you look at the global assessment GAF scores of 45 by Dr. Rowe and Dr. Boydston and actually Dr. Griffin. And Dr. Griffin perhaps factors in some alcohol that's not factored into by Dr. Rowe and Dr. Boydston, both of whom did not feel that any alcohol use was a contributing factor to her disability. And so when you look at that, and I think Dr. McKnight factored that in significantly, Your Honor. And I don't think that conclusion of his is supported by the substantial evidence. And I think that's what then started the Administrative Law Judge down that entire path of that and did not then focus on the issues of what Dr. Boydston, the psychiatrist there, talked about and Dr. Rowe. But, and we were examining but non-treating physicians. However, if you then look at the very consistent opinions of Drs. Schneider and Dr. Richardson, who have been consistently, I think as early as 1996, as I recall, Dr. Schneider suggests, recommends that Ms. Cunningham apply for SSI. Well, let me ask you this, that you, if I understand your argument correctly, you seem to be arguing that the fact that if the claimant's doctor opines that she meets a medical impairment, that she meets the listed medical impairment, that Bowen, Baxter and Ramirez establish a conclusive presumption of that. That's what I hear you arguing. Yes, Your Honor. And I don't read the cases the same way. So I want you to tell me where in those cases it says it's a conclusive presumption. I don't know if I can locate it. Am I correctly stating your argument that you're basically saying because her doctor says she meets the listed requirement that Bowen, Baxter and Ramirez create a conclusive presumption? I think the rule, though, that's not Of her disability. I think, though, the case that's perhaps more applicable is the case of Holohan, excuse me, versus Massoneri, Your Honor. And I cite it later in my brief really under the rules as it relates to weight to be given to treating physicians and versus, but also it's a very good discussion, Your Honor, of the weight to be given if a person meets a listing of I've always thought it was a conclusive presumption. Well, for you to prevail, do I have to agree with that? Is that basically where I need to go for you to prevail? I think that's one basis to prevail. And I think the second basis that Ms. Cunningham can prevail is on the more usual rules of the weight to be given, the treating physician versus the examining but non-treating versus the non-examining physician's opinions. I think it's really, it's a two-fold argument to prevail. But certainly I think that Dr. Joff Richardson's statements that she meets the listing impairments at 1204 and 1202 should be considered, given great weight by this court because of the sequential evaluation process that has been developed to evaluate social security disability claims and the weight to be given at step three. We know that alcoholism is not a cause of disability under the Social Security Administration, correct? It's not a cause. It's not a disability. It can be a disability. Well, let me ask you this question. Alcoholism by itself is not a disabling disability. But suppose that the alcoholism contributes to a brain injury, then is that a disability, could be considered a disability? As I understand the law, Your Honor, and I think it was changed about 1996, March of 1996, Congress changed on this issue of the alcoholism, and I think the courts are now required to look at whether or not there's been, that alcoholism materially contributes to disability. I think that under the latest cases, and I think Bustamante comes to my mind, Your Honor, but in any event, I think they have to go through a process to determine if they're disabled. Then they have to decide, number one, whether they'd be disabled without the use of alcoholism, and I think in that case the claimant prevails. I think if the only factor that makes them disabled is the combined alcoholism, then I think the claimant loses. And if they can't make a distinction between the two, then I think the claimant can prevail. So how alcohol pairs in specifically with the organic brain injury, I guess the evidence would have to be whether or not she would be independently disabled, and I think that both Drs. Rowe and Dr. Boydston would establish that in their evaluations. All right. I'm going to give you a minute for rebuttal, if you want to save that. Good morning. Johanna Vander Lee on behalf of Appellee Commissioner Joanne Barnhart of Social Security. The ALJ in this case properly relied on the objective medical and psychological tests rather than on the claimant's subjective reports of disability. The claimant's credibility in this case was severely impacted by her three criminal misdemeanor convictions for the crime of giving false information, by her inconsistent statements, by the secondary gain motivations that were evident in the evidence, and by the absence of objective medical evidence that she had anything wrong with her physically or mentally that would prevent her from working. Well, how is the alcohol factored into that? Because didn't, you know, I mean, alcoholics keeping track of their drinking is, might not be the best measure of a person's credibility. How was that factored into the credibility finding on her? Judge, excuse me, Dr. McKnight testified that with the impact of alcohol, she would have had moderate to marked limitations in social functioning and concentration and in her activities of daily living. But without the impact of consuming alcohol on a regular basis, she would have had only slight impairments in those areas. So that was factored into the in his residual functional capacity finding. What if alcoholism decreases the brain injury, the results of the brain injury? Is that a disabling factor that the ALJ must consider? No, the ALJ would need to factor out the impact of alcohol on the traumatic brain injury, which in this case the ALJ What case does that?  I know that alcoholism can be considered, but alcoholism increasing a traumatic brain injury, and to me it sounds reasonable that it certainly should, must. The ALJ has to disregard that entirely? Yes, under the case law. He must factor out the impacts of her continued drinking. Does that make sense? Yes. So the other factors that the ALJ considered in discrediting the claimant were that her robust daily activities included activities such as gardening, collecting and breaking rocks, walking her dog, gardening, cooking, shopping, socializing. In addition, she made inconsistent statements regarding the amounts of time she worked in different jobs. She variably denied that she had legal problems, yet she actually had these prior convictions for drinking. She had two convictions for DUI. She had convictions for giving false information. She also gave inconsistent statements about her ability to concentrate. She told Dr. Griffin that she How does your, if you're an alcoholic, how does that affect your credibility and your ability to remember? I mean, because obviously you've got the one thing that you get dinged and credibility findings for being inconsistent. But if your alcoholism affects your ability to remember things accurately, does, you know, how does that, is that fair? It is, because if you look at all of the examining physician's reports, Ms. Cunningham is able to give very detailed histories of what has happened to her in her life. And clearly, the alcohol wasn't affecting her concentration when she took the objective tests. For example, in the trail-making test, she performed in the average range. And in fact, there was some question about whether she was faking bad in the more, in the simpler trail-making A test. She also scored in the average range in her IQ test. She scored above average in many of the Wechsler memory scale tests. In fact, she was more than one and a half standard deviations above the average in the Wechsler standard, excuse me, Wechsler memory scale for a working memory. In addition, on the MMPI-2, she had an extremely elevated F scale, which signified that she was faking bad or malingering. And although Dr. Griffin said, oh, I don't think she's malingering, Dr. McKnight commented on that opinion and said it's clearly not supported by the test scores. Well, Dr. Richardson was fairly disregarded, is my understanding, that while he's not a doctor. And why is it in his opinion that Cunningham met the listed impairments of affective disorder and memory impediment? Why is that unreliable? Because isn't that, didn't the court find that that was unreliable? Yes. The ALJ found that Dr. Richardson's opinion that the claimant met listings 1202 and 1204 was not supported by the evidence. In fact, on page 414 of the ALJ's decision, he goes through his description. So it wasn't just because he's not a mental health expert? No. It was based on the examining physician opinions of Dr. Salam, who's a neurologist and an internist, on the testimony of Dr. McKnight. It was also based on, I'll quote the ALJ here, he said the conclusions of Dr. Richardson that the claimant suffered from organic mental syndrome and was disabled due to her impairments was based solely on her statements of symptoms and history and was unsupported by any observations, by any collateral sources, by review of the medical records or psychological test results. So the ALJ states on page 411 that he sent interrogatories to Dr. Richardson, and on 414 he states why he's rejecting Dr. Richardson's opinions that the claimant met the listings. All right. Because I have the appellant on one hand arguing that if your own doctor says that you meet the listed impairment, that is entitled to a conclusive presumption. And on the other hand, I have the ALJ saying that this testimony was unreliable. But what you're telling me is that the record says that he wasn't just ruled out as saying, no, you can't give an opinion on this. It's just I don't find it supported by substantial evidence. That's exactly what happened. The ALJ looked at all of the evidence, and he considered Dr. McKnight's testimony. And Dr. McKnight was the only doctor who had an opportunity to look at all of the evidence. And substantial evidence did not support the opinion that the claimant was disabled due to her mental impairments. We have her performing very well in the average or above average range on her IQ tests, on her Wechsler memory tests, on the MMPI where she's faking bad. And then we have her performing fairly well on the trail-making tests. And there are examining and treating physicians who disagree with Dr. Richardson. Immediately after the motor vehicle accident in 1995, the claimant was treated by Dr. Hettle. Dr. Hettle stated that she was released to perform her past work as a housekeeper. Subsequent to Dr. Griffin, within three weeks of Dr. Griffin stating how disabled she was, we have Dr. Salam, who's a neurologist and an internist, and he conducts the mini mental status examination tests and determines that there is nothing wrong with her mentally, psychologically, physically, or in any other way. And he says she's able to perform a regular work day and is able to return to work. So substantial evidence did contradict Dr. Richardson's opinion. And according to the opinions of Dr. Hettle and Dr. Salam and Dr. McKnight. Thank you. Thank you. So in addition to Dr. McKnight's opinion, which was that the claimant was mildly limited in her ability to perform some work functions, we have Dr. Hettle, who released the claimant to work back in 1995 after her motor vehicle accident. We have Dr. Salam stating that she is able to go back to work and perform a regular work schedule. We have Dr. Rowe's objective tests, which are the Wexler Adult Intelligence Scale, which has her full scale IQ at 101, which is slightly above average. On the Wexler Memory Scale, we have her scoring one and a half standard deviations above the average in her working memory. She's got a strength in her ability to recall. And all of this goes against the claimant's testimony that she was inhibited in her ability to remember to what to do next and that she needed to call her boyfriend to help her remember what to do next. Given the objective tests and given her, quote, unusual deficit in fund of knowledge, that suggests that she may have been faking bad throughout her claim. Dr. Rowe notes that her fund of knowledge regarding whether she remembered who was the president during the Civil War, who Martin Luther King was, where Africa was, suggested that she may not have been as disabled as she was presenting. The Court can uphold the ALJ's findings if the weight of the medical evidence supports the hypothetical supported by the ALJ. And in this case, the ALJ considered the vocational expert's testimony that her prior work was unskilled work performed at a medium exertional level. The ALJ listened to the vocational expert's testimony that a person with the claimant's mild mental limitations could perform her past work and found that, indeed, she could perform her past relevant work. All right. Thank you. Your time has expired. All right. Mr. Powell, you have one minute. Thank you, Your Honor. To address real... Is she on welfare? Pardon? Is she on welfare? She's been on DSHS, yes. What? DSHS welfare, yes. To address briefly, I'd ask the Court to review specifically the MMPI that was done. I'm not going to restate it here, as it was set out in my reply brief at pages 12 to 13. And I think that you've got the issues also of potential organic brain injury that Dr. Griffin does discuss there. But to turn to the indication that Dr. Richardson's opinions were rejected without any basis other than the claimant's testimony, which submitted a review of the page 20, as I set forth in my reply brief, indicates that, in fact, these were records, these were interrogatories that were submitted by the administrative law judge after the hearing to Dr. Richardson. He was obviously wanting to get some answers and provided a great number of medical records and materials. Oops. Looks like I'm out of time. All right. Thank you for your argument. This matter will now stand submitted. Thank you, Your Honor. Giselle Johnson v. Boys and Girls Club of South Puget Sound, 04351.
judges: Ferguson, Callahan, Bolton